**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**BARBARA G. BROWN, as President and on behalf of the**
**CITYWIDE ASSOCIATION OF LAW ASSISTANTS,**
**ARTHUR CHELIOTES, as President and on behalf of**
**LOCAL 1180, COMMUNICATIONS WORKERS OF**
**AMERICA, AFL-CIO, JOHN CLANCY, as President**
**and on behalf of the COURT OFFICERS BENEVOLENT**
**ASSOCIATION OF NASSAU COUNTY, CLIFFORD**
**KOPPELMAN, as President and on behalf of LOCAL**
**1070, DISTRICT COUNCIL 37 AFSCME, AFL-CIO,**
**BRENDA LEVINSON, as President and on behalf of the**
**COURT ATTORNEYS ASSOCIATION OF THE CITY**
**OF NEW YORK, CHRISTOPHER MANNING, as**
**President and on behalf of the SUFFOLK COUNTY**
**COURT EMPLOYEES ASSOCIATION, INC., JOHN**
**STRANDBERG, as President and on behalf of the**
**SUPREME COURT OFFICERS ASSOCIATION, and**
**JOSEPH C. WALSH, as President and on behalf of the**
**NEW YORK STATE COURT CLERKS ASSOCIATION,**

**Plaintiffs,**

**vs.**                                                                    **1:13-CV-645**
                                                                              **(MAD/CFH)**

**THE STATE OF NEW YORK, ANDREW M. CUOMO,**
**individually, and in his official capacity as Governor of**
**the State of New York, NEW YORK STATE UNIFIED**
**COURT SYSTEM, JONATHAN LIPPMAN, individually**
**and in his capacity as the Chief Judge of the State of**
**New York, A. GAIL PRUDENTI, individually and in her**
**capacity as Chief Administrative Judge of the State of**
**New York, NEW YORK STATE CIVIL SERVICE**
**DEPARTMENT, PATRICIA A. HITE, individually, and**
**in her official capacity as Commissioner of the New York**
**State Civil Service Department, NEW YORK STATE**
**CIVIL SERVICE COMMISSION, CAROLINE W. AHL**
**and J. DENNIS HANRAHAN, individually, and in their**
**official capacities as Commissioners of the New York State**
**Civil Service Commission, ROBERT L. MEGNA,**
**individually, and in his official capacity as Director of the**
**New York State Division of the Budget, and THOMAS P.**
**DiNAPOLI, individually, and in his official capacity as**
**Comptroller of the State of New York, and NEW YORK**
**STATE AND LOCAL RETIREMENT SYSTEM,**

**Defendants.**

_____

APPEARANCES:                          OF COUNSEL:

**GREENBERG BURZICHELLI**              **SETH H. GREENBERG, ESQ.**
**GREENBERG P.C.**
3000 Marcus Avenue, Suite 1W7
Lake Success, New York 11042
Attorneys for Plaintiffs

**ERIC T. SCHNEIDERMAN**               **CHARLES J. QUACKENBUSH, ESQ.**
Attorney General of the State of New York   **RALPH PERNICK, ESQ.**
The Capitol                            Assistant Attorneys General
Albany, New York 12224
Attorney for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## INTRODUCTION

On February 22, 2012, Plaintiffs commenced this action alleging that Defendants

unilaterally increased the percentage of contributions that Plaintiffs, unions representing active

and retired employees, are required to pay for health insurance benefits and thereby violated the

Contracts Clause and Due Process Clause of the United States Constitution, impaired Plaintiffs'

contractual rights under the terms of their respective Collective Bargaining Agreements ("CBA"),

and violated state law.  Plaintiffs seek injunctive relief, declaratory judgments, and monetary

damages.  *See* Dkt. No. 1 ("Complaint").[1]  Presently before the Court is Defendants' motion to

_____

[1] On December 29, 2011, Chief United States District Judge Gary L. Sharpe issued an
Order pursuant to General Order No. 12 of the United States District Court for the Northern
District of New York deeming ten separate actions filed in this district alleging similar facts and
causes of action as "related."  The instant action was originally filed in the United States District
Court for the Eastern District of New York, and was transferred to this Court on June 6, 2013,
pursuant to an order to transfer venue issued by Judge Arthur D. Spatt.  Dkt. No. 35.  Following
that transfer, on July 24, 2013, Magistrate Judge Randolph F. Treece ordered that this action be
deemed related to the ten other, similar actions, and was reassigned to this Court.  Dkt. No. 46.

dismiss Plaintiffs' complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Dkt. No. 16. Plaintiffs have opposed the motion. Dkt. No. 23.

BACKGROUND[2]

Plaintiff Citywide Association of Law Assistants ("CALA") is the collective bargaining representative for certain non-judicial court attorney employees in the civil, criminal, and family courts of New York City employed by Defendant New York State Unified Court System ("UCS"). Plaintiff Barbara Brown is the Chairperson of CALA. *See* Dkt. No. 1 at ¶¶ 11-12.

Plaintiff Local 1180, Communication Workers of America, AFL-CIO ("Local 1180") is the collective bargaining representative for certain non-judicial employees employed by UCS including, among others, Court Analysts, Administrative Services Clerks, and Supervising Photostat Operators. Plaintiff Arthur Cheliotes is the President of Local 1180. *See id.* at ¶¶ 13-14.

Plaintiff Court Officers Benevolent Association of Nassau County ("COBANC") is the collecting bargaining representative for certain non-judicial court employees in Nassau County employed by UCS. Plaintiff John Clancy is the President of COBANC. *See id.* at ¶¶ 15-16.

Plaintiff Local 1070, District Council 37, AFSCME, AFL-CIO ("Local 1070") is the collective bargaining representative for certain non-judicial employees employed by UCS. Plaintiff Clifford Koppelman is the President of Local 1070. *See id.* at ¶¶ 17-18.

Plaintiff Court Attorneys Association of the City of New York ("CAA") is the collective bargaining representative for certain non-judicial attorney employees in New York City employed by UCS. Plaintiff Brenda Levinson is the President of CAA. *See id.* at ¶¶ 19-20.

---

[2] The background information is taken from the Complaint and is presumed true for the purposes of this motion only. This does not constitute a factual finding by the Court.

Plaintiff Suffolk County Court Employees Association, Inc. ("SCCEA") is the collective bargaining representative for certain non-judicial employees in Suffolk County employed by UCS. Plaintiff Christopher Manning is the President of SCCEA. *See id.* at ¶¶ 21-22.

Plaintiff New York State Supreme Court Officers Association ("SCOA") is the collective bargaining representative for certain New York State Supreme Court officers employed by UCS. Plaintiff John Strandberg is the President of SCOA. *See id.* at ¶¶ 23-24.

Plaintiff New York State Court Clerks Association ("CCA" and together with CALA, Local 1180, COBANC, Local 1070, CAA, SCCEA, and SCOA, the "Unions" ) is the collective bargaining representative for certain non-judicial court clerks employed by UCS. Plaintiff Joseph C. Walsh is the President of CCA. *See id.* at ¶¶ 25-26.

Defendant State of New York, through Defendant UCS, is the employer of the members of the Plaintiff Unions. Both are parties to each of the Plaintiff Union's respective CBAs. *See id.* at ¶ 27. Plaintiff Andrew M. Cuomo is the Governor of the State of New York, Defendant Jonathan Lippman is the Chief Judge of UCS, and Defendant A. Gail Prudenti is the Chief Administrative Judge of UCS. *See id.* at ¶¶ 28, 31-32.

During the relevant time period, Defendant Patricia A. Hite was the Acting Commissioner of Defendant New York State Civil Service Department. *See id.* at ¶¶ 33-36. Defendants Caroline W. Ahl and J. Dennis Hanrahan were members of Defendant New York State Civil Service Commission. *See id.* at ¶¶ 38, 41. Defendant Robert L. Megna was the Director of the New York State Division of the Budget. *See id.* at ¶ 42. Defendant Thomas P. DiNapoli was the Comptroller of the State of New York responsible for authorizing the payment of salaries and pensions for current and retired UCS employees. *See id.* at ¶ 44.

Article XI of the New York State Civil Service Law ("CSL") provides for a statewide health insurance plan for eligible State employees and retired State employees known as the New York State Health Insurance Plan ("NYSHIP" or "Empire Plan"). *See id.* at ¶ 45. New York Civil Service Law § 167(1) establishes the State contribution rate towards the cost of health insurance premium or subscription charges for the coverage of State employees and retired State employees enrolled in NYSHIP. *See id.* at ¶ 52. Prior to 1983, the State was required to pay the full cost of premium or subscription charges for the coverage of State employees and retired State employees enrolled in NYSHIP. *See id.* at ¶ 54. Chapter 14 of the Laws of 1983 amended Civil Service Law § 167(1)(a) to limit the amount that the State was required to pay towards the cost of premium or subscription charges for the coverage of State employees and retired State employees enrolled in NYSHIP, by providing that the State was required to contribute only ninety percent (90 %) of the cost of such premium or subscription charges for the coverage of State employees and retired State employees retiring on or after January 1, 1983. The State would continue to contribute seventy-five percent (75 %) for dependent coverage for State employees and retired State employees. *See id.* at ¶ 55.

Between 1983 and 2011, Civil Service Law § 167(8) provided, *inter alia*,

> [n]otwithstanding any inconsistent provision of law, where and to the extent that an agreement between the state and an employee organization entered into pursuant to article fourteen of this chapter so provides, the state cost of premium or subscription charges for eligible employees covered by such agreement may be increased pursuant to the terms of such agreement.

During that same time period, the Plaintiff Unions and Defendant State of New York negotiated and entered into several successive CBAs, which provided that the State contribution rate would be ninety percent and seventy-five percent for individual and dependent coverage, respectively. *See id.* at ¶ 56-58. Each of the Plaintiff Union's most recent CBAs covered the

period beginning April 1, 2007, and expired March 31, 2011. *See id.* at ¶ 61. The Plaintiff Unions have not negotiated new CBAs with Defendants since the expiration of the most recent CBAs. *See id.* at ¶ 170.

Article 8 of the CBAs govern Health Insurance. Section 8.1 of the CBA provides as follows:

> The State shall continue to provide health and prescription drug benefits administered by the Department of Civil Service. Employees enrolled in such plans shall receive health and prescription drug benefits to the same extent, at the same contribution level, in the same form and with the same co-payment structure that applies to the majority of represented Executive Branch employees.

*Id.* at ¶¶ 63, 65.

On August 17, 2011, the New York State legislature passed Chapter 491 of the Laws of 2011 ("Chapter 491"), which amended CSL § 167(8) effective as of April 2, 2011. *See id.* at ¶ 81. Chapter 491 replaced the word "increased" with the word "modified." *See id.* at ¶ 84. As amended, CSL § 167(8) now reads:

> Notwithstanding any inconsistent provision of law, where and to the extent that an agreement between the state and an employee organization entered into pursuant to article fourteen of this chapter so provides, *the state cost of premium or subscription charges for eligible employees covered by such agreement may be modified pursuant to the terms of such agreement*. The president [of the Civil Service Commission], with the approval of the director of the budget, may extend the modified state cost of premium or subscription charges for employees or retirees not subject to an agreement referenced above and shall promulgate the necessary rules or regulations to implement this provision.

*Id.* at ¶ 86 (emphasis added).

In August 2011, the State reached an agreement with non-party the Civil Service Employees Association ("CSEA"), one of the largest public employee unions in New York,

which increased employee health care contributions and changed the existing system of co-pays, deductibles, and other programs. *See id.* at ¶¶ 88, 90.

On September 21, 2011, Defendant Hite requested Defendant Megna's approval to extend the modified state contribution rates negotiated with CSEA to, *inter alia*, all employees of the UCS. *See id.* at ¶ 91. On September 22, 2011, Defendant Megna approved the extension of modified contribution rates. *See id.* at ¶ 94.

The new reduced State contribution rates for current members of the Plaintiff Unions and their dependents, effective October 1, 2011, were as follows: eighty-eight (88%) percent for current union members who are Salary Grade Nine and below; eighty-four (84%) percent for current union members who are Salary Grade Ten and above; seventy-three (73%) percent for dependents of current union members who are Salary Grade Nine and below; and sixty-nine (69%) percent for dependents of current union members who are Salary Grade Ten and above. *See id.* at ¶ 92. The new reduced State contribution rates for retirees and their dependents were as follows: eighty-eight (88%) percent for retirees who retired or will retire between January 1, 1983 and December 31, 2011; seventy-three (73%) percent for dependents of retirees who retired or will retired between January 1, 1983 and December 31, 2011; eighty-eight (88%) percent for retirees (and their dependents) who retire after January 1, 2012 from a title Salary Grade Nine or below or a similar position; and eighty four (84%) for retirees (and their dependents) who retire after January 1, 2012 from a title Salary Grade Ten or above or a similar position. *See id.* at ¶ 93.

Thereafter, on September 27, 2011, Defendant Hite approved and filed emergency amendments to 4 N.Y.C.R.R. §§ 73.3(b) and 73.12 to conform those regulations to the amended CSL § 167. *See id.* at ¶¶ 95-96. According to the notice of emergency rule-making, the purpose

of these amendments was to "implement[] the terms of a collective bargaining agreement covering members . . . represented by [CSEA]." *Id.* at ¶ 97.

On February 22, 2012, Plaintiffs filed a complaint asserting causes of action for impairment of contract, violation of due process, violation of civil rights pursuant to 42 U.S.C. § 1983, breach of contract, and violation of CSL § 209-a.1(d), (e). Plaintiffs also claim that Civil Service Law § 167(8) is unconstitutional as applied. Plaintiffs also seek an order, pursuant to Article 78 of the New York Civil Practice Law and Rules, declaring that Defendants' actions in administratively decreasing the State contribution rates was arbitrary and capricious and an abuse of discretion. Plaintiffs commenced this action against the individual defendants in both their individual and official capacities. *See* Dkt. No. 1.

## DISCUSSION

As an initial matter, the Court is compelled to note that Plaintiffs' Complaint alleges much of the same conduct and many of the same causes of action as alleged by the plaintiffs in the ten related cases pending before this Court. Those complaints also name many of the same defendants as are named in the instant action. Defendants in the related cases filed motions to dismiss similar to Defendants' motion here, which the Court has already ruled upon both in the context of the motions to dismiss as well as motions for reconsideration. Nearly all of the issues raised in Defendants' motion to dismiss here were previously briefed and decided in the related cases.

In deciding the instant motion, the Court is guided by the doctrine of the law-of-the-case. The law-of-the-case doctrine "posits that if a court decides a rule of law, that decision should continue to govern in subsequent stages of the same case." *Aramony v. United Way*, 254 F.3d 403, 410 (2d Cir. 2001) (quotation and citation omitted). The doctrine is broad enough to

"encompass[ ] a lower court's adherence to . . . the rulings of another judge or court in . . . a closely related case." *Ovadia v. Top Ten Jewelry Corp.*, No. 04-2690, 2005 WL 1949970, *1 (S.D.N.Y. Aug. 12, 2005) (citing *Heller Int'l Corp. v. Sharp*, No. 85-3381, 1994 WL 386421, *3 (N.D. Ill. Jul. 19, 1994) (citation and quotation marks omitted); *see Moss v. Crawford & Co.*, 201 F.R.D. 398, 401 n.1 (W.D. Pa. 2000) (stating that the law-of-the-case doctrine applies to issues previously determined in closely related cases).

### Standard on a Motion to Dismiss under 12(b)(1)

In contemplating a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the Court must "accept as true all material factual allegations in the complaint." *Atl. Mut. Ins. Co. v. Balfour MacLaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992). The court may consider evidence outside the pleadings, *e.g.*, affidavits, documents, or otherwise competent evidence. *See Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986); *Antares Aircraft v. Fed. Rep. of Nigeria*, 948 F.2d 90, 96 (2d Cir. 1991). "The standards for considering a motion to dismiss under Rules 12(b)(1) and 12(b)(6) are substantively identical." *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003).

Defendants move for dismissal pursuant to Fed. R. Civ. P. 12(b)(1) arguing that the Eleventh Amendment and principles of sovereign immunity precludes the Court from obtaining subject matter jurisdiction over the following claims: (1) Plaintiffs' claims against the State of New York and its agencies; (2) Plaintiffs' claims against Defendants in their official capacities; and (3) Plaintiffs' state law causes of action.

## I.     Eleventh Amendment/Sovereign Immunity

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of

the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."
*State Emp. Bargaining Agent Coalition v. Rowland*, 494 F.3d 71, 95 (2d Cir. 2007) (citing U.S. Const. amend. XI).  The Eleventh Amendment bars federal courts from exercising subject matter jurisdiction over claims against states absent their consent to such a suit or an express statutory waiver of immunity.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 92-100 (1984); *see also Huminski v. Corsones*, 386 F.3d 116, 133 (2d Cir. 2004) (citation omitted).  Although the plaintiff generally bears the burden of proving subject matter jurisdiction, the entity claiming Eleventh Amendment immunity bears the burden to prove such.  *See Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 237 (2d Cir. 2006).

Section 1983 imposes liability for "conduct which 'subjects, or causes to be subjected' the complainant to a deprivation of a right secured by the Constitution and laws."  *Rizzo v. Goode*, 423 U.S. 362, 370–71 (1976) (quoting 42 U.S.C. § 1983).  It is well-settled that states and their officials acting in their official capacities are not "persons" under section 1983 and, therefore, Eleventh Amendment immunity is not abrogated by that statute.  *See Will v. Mich. Dep't. of State Police*, 491 U.S. 58, 71 (1989).

**A.      Federal and State Law Claims against Defendants State of New York, New York State Unified Court System, New York State Civil Service Department, New York State Civil Service Commission, and New York State and Local Retirement System**

Regardless of the type of relief sought, the Eleventh Amendment bars this Court from assuming jurisdiction over Plaintiffs' claims asserted against the State of New York and its agencies.  When the state or one of its "arms" is the defendant, sovereign immunity bars federal courts from entertaining lawsuits against them "regardless of the nature of the relief sought." *Pennhurst*, 465 U.S. at 100.  In this case, the State has neither waived its immunity, nor has Congress exercised its power to override Eleventh Amendment immunity.  Accordingly, all of

Plaintiffs' claims against the State of New York, New York State Unified Court System, New York State Civil Service Department, New York State Civil Service Commission, and New York State and Local Retirement System are dismissed. *See McGinty v. New York*, 251 F.3d 84, 100 (2d Cir. 2001) (dismissing the claims against the Retirement System for lack of subject matter jurisdiction based upon the Eleventh Amendment).

**B.     Federal Claims Against Defendants Cuomo, Lippman, Prudenti, Hite, Ahl, Hanrahan, Megna, and DiNapoli in their Official Capacity**

Plaintiffs also assert claims against Defendants Cuomo, Lippman, Prudenti, Hite, Ahl, Hanrahan, Megna, and DiNapoli in their official capacities. Eleventh Amendment immunity extends to state officials sued in their official capacities for retrospective relief. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Actions for damages against a state official in his or her official capacity are essentially actions against the state, and will be barred by the Eleventh Amendment unless: (1) Congress has abrogated immunity, (2) the state has consented to suit, or (3) the *Ex parte Young* doctrine applies. *See Will*, 491 U.S. at 71. Since Congress has not abrogated immunity and the State has not consented to suit, as discussed *supra*, Defendants' motion to dismiss presents issues involving the third exception.

In *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court established an exception to state sovereign immunity in federal actions where an individual brings an action seeking injunctive relief against a state official for an ongoing violation of law or the Constitution. This doctrine provides "a limited exception to the general principle of sovereign immunity [that] allows a suit for injunctive relief challenging the constitutionality of a state official's actions in enforcing state law under the theory that such a suit is not one against the State, and therefore not barred by the Eleventh Amendment." *Ford v. Reynolds*, 316 F.3d 351, 354-55 (2d Cir. 2003). Under the doctrine, a suit may proceed against a state official in his or her official capacity,

notwithstanding the Eleventh Amendment, when a plaintiff "(a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective." *See In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (quotations and citations omitted); *see also Santiago v. New York State Dep't of Corr. Serv.*, 945 F.2d 25, 32 (2d Cir. 1991) (holding that such claims, however, cannot be brought directly against the state, or a state agency, but only against state officials in their official capacities).

In *Edelman v. Jordan*, 415 U.S. 651, 653 (1974), the Supreme Court expanded upon *Ex parte Young* and held that even when a plaintiff's requested relief is styled as an injunction against a state official, if "the action is in essence one for recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." *Id.* at 663 (citing *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459 (1945)). Retroactive relief is "measured in terms of a monetary loss resulting from a past breach of a legal duty on the part of the defendant state officials" regardless of how the relief is fashioned. *Id.* at 668. Prospective relief includes injunctive relief that bars a state actor from engaging in certain unconstitutional acts or abates ongoing constitutional violations as well as the payment of state funds "as a necessary consequence of compliance in the future with a substantive federal-question determination[.]" *Id.* "The general criterion for determining when a suit is in fact against the sovereign is the effect of the relief sought, namely, would the relief abate an ongoing violation or prevent a threatened future violation of federal law?" *New Jersey Educ. Ass'n v. New Jersey*, No. 11-5024, 2012 WL 715284, *4 (D.N.J. Mar. 5, 2012) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. at 107). In *Edelman*, the majority concluded:

> It is one thing to tell [a state official] that he must comply with the federal standards for the future if the state is to have the benefit of

> federal funds in the programs he administers. It is quite another
> thing to order the [state official] to use state funds to make
> reparation for the past. The latter would appear to us to fall afoul of
> the Eleventh Amendment if that basic constitutional provision is to
> be conceived of as having any force.

*Edelman*, 415 U.S. at 695 (quoting *Rothstein v. Wymann,* 467 F.2d 226, 236-37 (2d Cir. 1972)).

In order to determine whether the *Ex parte Young* exception allows Plaintiffs' suit against the individual defendants in their official capacities, this Court must first determine whether the Complaint alleges an ongoing violation of federal law, and second, whether Plaintiffs seek relief properly characterized as prospective. *See Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). To successfully avoid the Eleventh Amendment bar, a plaintiff must prove that a defendant's violation of federal law is of an ongoing nature as opposed to a case in which federal law has been violated at one time or another over a period of time in the past. *See Papasan v. Allain*, 478 U.S. 265, 277-78 (1986) (internal quotation marks omitted). The inquiry for determining whether an "ongoing violation" exists is, "does the enforcement of the law amount to a continuous violation of plaintiffs constitutional rights or a single act that continues to have negative consequences for plaintiffs." *New Jersey Educ. Ass'n*, 2012 WL 715284, at *4.

Plaintiffs allege that Defendant officials are engaged in enforcing Chapter 491 of the Laws of 2011, a law that is unconstitutional. An allegation that state officials are enforcing a law in contravention of controlling federal law is sufficient to allege an ongoing violation of federal law for the purposes of *Ex parte Young*. *See Chester Bross Const. Co. v. Schneider*, No. 12-3159, 2012 WL 3292849, *6 (C.D. Ill. Aug. 10, 2012) (citing *Verizon Md., Inc.*, 535 U.S. at 645). Thus, Plaintiffs have satisfied the first prong of *Ex parte Young*.

With respect to the nature of relief sought, Plaintiffs' "WHEREFORE" clause contains the following demands:

A. An order that Defendants' actions in unilaterally decreasing the State Contribution Rate and diminishing or otherwise altering the union members' health insurance and prescription drug benefits and coverages, violates the Contracts Clause of the U.S. Constitution, and thus is null and void;

B. An order that Defendants' actions in unilaterally decreasing the State Contribution Rate and diminishing or otherwise altering the union members' health insurance and prescription drug benefits and coverages, violates the U.S. Constitution and the Constitution and laws of New York State and thus is null and void;

C. A determination that Defendants' actions in unilaterally decreasing the State Contribution Rate and diminishing or otherwise altering the union members' health insurance and prescription drug benefits and coverages constitutes a breach of the parties' CBAs;

D. A declaration that Defendants acted in a manner which was arbitrary and capricious and an abuse of discretion;

E. A declaration that CSL § 167 (as amended by 2011 N.Y. Laws ch. 491) and the implementing regulations are unconstitutional- as applied to the eight Plaintiff Court Unions and their current and retired members and their dependents - to the extent that Defendants are relying upon this authority to continue extending and implementing reductions to the State Contribution Rate and diminishing or otherwise altering the union members' health insurance and prescription drug benefits and coverages in violation of the Contract Clause and Due Process Clause of the U.S. Constitution.

F. An order permanently enjoining Defendants from continuing to apply CSL§ 167 (as amended by 2011 N.Y. Laws ch. 491) and the implementing regulations, against the eight Plaintiff Court Unions and their current and retired members and their dependents, as a basis for continuing to extend and implement unilateral reductions and modifications to the State Contribution Rate and health insurance and prescription drug benefits and coverages of current and retired union members and their dependents, in violation of the Contracts Clause and Due Process Clause of the U.S. Constitution.

G. An order permanently enjoining Defendants from continuing to make deductions from the pension or paychecks of retired or current union members and their dependents- or passing along any additional costs or changes- based on Defendants' ongoing unilateral reductions and modifications to the State Contribution Rate and health insurance and prescription drug benefits and coverages of current and retired union members and their dependents, in violation of the Contracts Clause and Due Process Clause of the U.S. Constitution.

H. Damages for union members who are impacted by the unilateral changes for any additional costs incurred by them to ensure the continuation of health insurance benefits for themselves and their dependents at the contractual level;

I. Attorneys' fees, costs and disbursements of this action pursuant to 42 U.S.C. § 1988, and as otherwise allowed by law; and

J. Such other relief as this Court deems appropriate.

Dkt. No. 1  The Court will address each request for relief in turn.

## 1.      Monetary Relief

Although not cited by Plaintiffs here, *Milliken v. Bradley*, 433 U.S. 267 (1977), allows in limited circumstances for ancillary damages necessary to effectuate prospective equitable or injunctive relief.  In *Milliken*, the district court ordered implementation of student assignment plans and educational components in the areas of reading, in-service teacher training, testing and counseling to effectuate desegregation.  The Supreme Court discussed the "prospective-compliance" exception which permits federal courts to enjoin state officials to conform their conduct to the  requirements of federal law notwithstanding a direct and substantial impact on the state treasury.  *Id*. at 289.  In *Milliken*, there was no money award in favor of the respondent or any member of his class.  The Court explained that the case "simply does not involve individual citizens conducting a raid on the state treasury for an accrued monetary liability."  *Id*. at 290 n.22.

Instead, the decree required state officials to eliminate a segregated school system. *Id.* The Court reasoned that

> [t]hese programs were not, and as a practical matter could not be, intended to wipe the slate clean by one bold stroke, as could a retroactive award of money in *Edelman*. Rather, by the nature of the antecedent violation, which on this record caused significant deficiencies in communications skills — reading and speaking — the victims of Detroit's *de jure* segregated system will continue to experience the effects of segregation until such future time as the remedial programs can help dissipate the continuing effects of past misconduct. Reading and speech deficiencies cannot be eliminated by judicial fiat; they will require time, patience, and the skills of specially trained teachers. That the programs are also 'compensatory' in nature does not change the fact that they are part of a plan that operates prospectively to bring about the delayed benefits of a unitary school system. We therefore hold that such prospective relief is not barred by the Eleventh Amendment.

*Id.* at 290.

The facts and relief sought in *Milliken* are clearly distinguishable from those at hand and thus, the Court is not persuaded that the holding supports Plaintiffs' claims herein. To the extent Plaintiffs seek monetary relief against Defendants acting in their official capacity as agents of the State, such claims are barred by the Eleventh Amendment. *See Fulton v. Goord*, 591 F.3d 37, 45 (2d Cir. 2009) (holding that "in a suit against state officials in their official capacities, monetary relief (unlike prospective injunctive relief) is generally barred by the Eleventh Amendment") (citation omitted).

**2.      Injunctive Relief**

Plaintiffs also seek an order permanently enjoining Defendants from implementing the reduced State contribution rates, arguing that the continued effectuation of Chapter 491 will have an impact upon Plaintiffs in the form of reduced wages and pension payments. Defendants concede that a properly pled claim for prospective relief is permissible under *Ex parte Young*, but

claim that Plaintiffs' allegations here are insufficient to fall within this exception. Defendants have not presented any argument, beyond conclusory citations to the case law under *Ex parte Young*, regarding the impact an injunction would have on the state treasury. To the extent that Plaintiffs seek prospective injunctive relief against Defendants, Plaintiffs have sufficiently alleged such claims and thus, based upon the purview of *Ex parte Young,* dismissal of such claims is not warranted at this time. *See Finch v. New York State Office of Children & Family Serv.*, 499 F. Supp. 2d 521, 538 (S.D.N.Y. 2007).

### 3. Declaratory Judgment

Declaratory judgments form part of the injunctive relief allowed for under *Ex parte Young*. *See Tigrett v. Cooper*, 855 F. Supp. 2d 733, 744 (W.D. Tenn. 2012). However, declaratory relief is not permitted under *Ex parte Young* when it would serve to declare only past actions in violation of federal law: retroactive declaratory relief cannot be properly characterized as prospective. *Id.*; *Green v. Mansour*, 474 U.S. 64, 74 (1985) (holding that the Eleventh Amendment bars retrospective declaratory relief against state officials); *New Jersey Educ. Ass'n*, 2012 WL 715284, at *5 (holding that a request for a declaratory judgment finding portions of a statute are unconstitutional is "nothing more than an indirect way of forcing the State to abide by its obligations as they existed prior to the enactment of" the challenged statute and therefore, "in both substance and practical effect, a request for specific performance" and, thus, not permitted).

In this matter, to the extent Plaintiffs seek declaratory relief regarding the individual Defendants' past conduct, such claims must be dismissed because the Eleventh Amendment "does not permit judgments against state officers declaring that they violated federal law in the past." *Finch*, 499 F. Supp. 2d at 538 n.138 (citing *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc*., 506 U.S. 139, 146 (1993)); *see also Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835,

847-48 (9th Cir. 2002) (noting that retrospective declaratory relief would declare that the state defendants committed constitutional violations in the past; prospective relief would declare that likely future actions are unconstitutional).

However, Plaintiffs' request for an order declaring Chapter 491 of the Laws of 2011 unconstitutional is prospective. *See Verizon Md.*, 535 U.S. at 645 ("The prayer for injunctive relief – that state officials be restrained from enforcing an order in contravention of controlling federal law – clearly satisfies our 'straightforward inquiry.'"). As to this request, to the extent that Plaintiffs seek prospective declaratory relief, that relief is not barred by the Eleventh Amendment.

To summarize, the Eleventh Amendment and principles of sovereign immunity deprive this Court of subject matter jurisdiction over all of Plaintiffs' claims against the State of New York, New York State Unified Court System, New York State Civil Service Department, New York State Civil Service Commission, and New York State and Local Retirement System, and Plaintiffs' claims for monetary damages against the Defendants Cuomo, Lippman, Prudenti, Hite, Ahl, Hanrahan, Megna, and DiNapoli in their official capacities. Jurisdiction remains over Plaintiffs' claims for prospective injunctive and declaratory relief and against Defendants Cuomo, Lippman, Prudenti, Hite, Ahl, Hanrahan, Megna, and DiNapoli in their official capacities.

**C.    New York State Law Claims Against Defendants Cuomo, Lippman, Prudenti, Hite, Ahl, Hanrahan, Megna, and DiNapoli in their Official Capacities**

Defendants also move for dismissal of Plaintiffs' state law claims asserted against Defendants in their official capacity. The jurisdiction of a federal court to entertain supplemental state law claims under 28 U.S.C § 1367 does not override Eleventh Amendment immunity. "Supplemental jurisdiction under 28 U.S.C. § 1367(a) does not constitute a congressional abrogation of the Eleventh Amendment granting district courts the power to adjudicate pendent

state law claims." *Nunez v. Cuomo*, No. 11-3457, 2012 WL 3241260, *20 (E.D.N.Y. Aug. 7, 2012) (citations omitted). The Eleventh Amendment bars suits in federal courts seeking relief, whether prospective or retroactive, against state officials for their alleged violations of state law. *See Pennhurst*, 465 U.S. 89, 106. The *Ex parte Young* doctrine is inapplicable where the officials are alleged to have violated state law. *See Local 851 of Int'l Bhd. of Teamsters v. Thyssen Haniel Logistics, Inc.*, 90 F. Supp. 2d 237, 247 (E.D.N.Y. 2000) (citing *Pennhurst*, 465 U.S. at 104-06). However, the Eleventh Amendment does not bar a suit when an official has allegedly acted entirely outside her state-delegated authority in a manner that violates federal law. *See Florida Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 696-697 (1982); *Pennhurst*, 465 U.S. at 101, n.11. In *Treasure Salvors*, the Supreme Court held as follows:

> [A]ction of an officer of the sovereign (be it holding, taking or otherwise legally affecting the plaintiff's property) that is beyond the officer's statutory authority is not action of the sovereign, a suit for specific relief against the officer is not barred by the Eleventh Amendment. This conclusion follows inevitably from *Ex parte Young*. If conduct of a state officer taken pursuant to an unconstitutional state statute is deemed to be unauthorized and may be challenged in federal court, conduct undertaken without any authority whatever is also not entitled to Eleventh Amendment immunity.

*Id*. at 696-97. A state officer acts *ultra vires* when he acts beyond the scope of his statutory authority, or pursuant to authority deemed to be unconstitutional. *Id*.

Here, Plaintiffs must establish that Defendants acted "without any authority whatsoever" under state law. *Sherwin-Williams Co. v. Crotty*, 334 F. Supp. 2d 187, 196 (N.D.N.Y. 2004). Plaintiffs allege that the state claims arise out of *ultra vires* acts by Defendants:

> Plaintiffs, eight unions representing various court employees and the Presidents/Chairpersons of these unions (collectively "Plaintiffs" or "Court Unions"), seek a declaration that the unilateral changes to employee health insurance benefits, coverage, and premium contribution rates for court employees by,

at the urging of, and with direction from the Defendants, substantially impair existing collective bargaining agreements ("CBAs") and are unconstitutional, and exceed the Defendants' statutory authority.
...
Upon information and belief, Defendant Hite has not attended or voted in an official capacity as Commission President or Acting President at any public meeting for the Commission.
...
CSL § 167, as amended by 2011 N.Y. Laws ch. 491, the implementing regulations and Defendants' application of these authorities against the Plaintiff Court Unions in order to unilaterally reduce the State Contribution Rate and health insurance and prescription drug benefits for current and retired union members, have no legitimate public purpose and/or constitute an abuse of power.
...
CSL § 167 (as amended by 2011 N.Y. Laws ch. 491) and the implementing regulations are unconstitutional- as applied to the eight Plaintiff Court Unions and their current and retired members and their dependents - to the extent that Defendants are relying upon this authority to continue extending and implementing reductions to the State Contribution Rate and diminishing or otherwise altering the union members' health insurance and prescription drug benefits and coverages in violation of the Contract Clause and Due Process Clause of the U.S. Constitution.

Dkt. No. 1 at ¶¶ 1, 40, 124, E.

Plaintiffs also allege that "Defendants' administrative actions in approving, extending and implementing changes to employee health benefits ... are *ultra vires*, without any lawful authority, unauthorized pursuant to New York Civil Service Law §167(8), arbitrary and capricious, and constitut[e] an abuse of discretion." *Id*. at ¶ 6. At this stage of the litigation, Plaintiffs have sufficiently pled the *ultra vires* exception to the Eleventh Amendment and, thus, Defendants' motion to dismiss Plaintiffs' state law claims as to the individual basis, on this basis, is denied.

**D.**     **Federal Claims Against Defendants Cuomo, Lippman, Prudenti, Hite, Ahl, Hanrahan, Megna, and DiNapoli in their Individual Capacities**

Plaintiffs assert § 1983 claims for monetary damages, injunctive relief, and declaratory judgment against Defendants Cuomo, Lippman, Prudenti, Hite, Ahl, Hanrahan, Megna, and DiNapoli, individually.  Suits against state officials in their personal capacity are not barred by the Eleventh Amendment, even for actions required by their official duties, *Hafer v. Melo*, 502 U.S. 21, 27-28 (1991) (holding that state officials may be personally liable for actions taken in their official capacity); however, such actions may be subject to dismissal on other grounds. Here, Defendants argue that legislative immunity divests this Court of jurisdiction over Plaintiffs' claims against the individual defendants in their individual capacities.  However, legislative immunity is a personal defense that may be asserted in the context of a challenge under Rule 12(b)(6) and is not proper for review as a jurisdictional bar under Rule 12(b)(1).  *See State Emp.*, 494 F.3d at 82 n.4.  Accordingly, that portion of Defendants' motion will be discussed *infra*.

## II. Fourth Cause of Action for Judgment Pursuant to Article 78 of the New York Civil Practice Laws and Rules

Defendants move to dismiss Plaintiffs' claims under N.Y.C.P.L.R. Article 78, arguing that they should be dismissed with the rest of Plaintiffs' state law claims pursuant to Eleventh Amendment and sovereign immunity principles, *see supra*, and because "the CPLR merely addresses procedural matters in State court, and cannot create procedural rules for the federal courts[.]"  Dkt. No. 16-1 at 9.

Although the parties did not focus on this issue in their respective memoranda of law, the Court has addressed this same cause of action in ruling on similar motions to dismiss in a series of related cases.  *See, e.g.*, *New York State Corr. Officers & Police Benevolent Ass'n v. State of New York*, 911 F. Supp. 2d 111, 131-133 (N.D.N.Y. 2012).  For the same reasons set forth in the Court's prior orders, the Court follows the "essentially unanimous position of the New York

district courts," *see Morningside Supermarket Corp. v. New York State Dep't of Health,* 432 F. Supp. 2d 334, 347, and declines to exercise jurisdiction over Plaintiffs' Fourth Cause of Action.

## Standard on a Motion to Dismiss under 12(b)(6)

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief and pleadings without considering the substantive merits of the case. *See Global Network Commc'ns v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006); *Patane v. Clark*, 508 F.3d 106, 111–12 (2d Cir. 2007). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself" unless all parties are given a reasonable opportunity to submit extrinsic evidence. *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). In ruling on a motion to dismiss pursuant to Rule 12(b)(6), a district court generally must confine itself to the four corners of the complaint and look only to the allegations contained therein. *Robinson v. Town of Kent, N.Y.*, No. 11 Civ. 2875, 2012 WL 3024766, at *3-4 (S.D.N.Y. July 24, 2012) (citing *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient facts "to sho[w] that the pleader is entitled to relief[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (internal quotation marks omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555, and present claims that are "plausible

on [their] face." *Id*. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the . . . complaint must be dismissed[.]" *Id*. at 570.

## I.     Claims Against Officials in their Individual Capacity

## A.     Personal Involvement

Defendants argue that Plaintiffs' conclusory, non-specific allegations regarding the personal involvement of each of the individual Defendants are insufficient to survive a motion to dismiss. In particular, Defendants contend that Plaintiffs have made several allegations related to certain Defendants' personal involvement "upon information and belief," that Plaintiffs have impermissibly relied on the doctrine of *respondeat superior* in their allegations with respect to certain Defendants' personal involvement, and that there are no allegations whatsoever linking certain Defendants to the conduct at issue. It appears that Plaintiffs have failed to address this argument in their oppositions to Defendants' motion to dismiss.

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) (citations omitted). "[W]hen monetary damages are sought under § 1983, the general doctrine of *respondeat superior* does not suffice and a showing of some personal responsibility of

the defendant is required." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quotation and other citations omitted). Nevertheless,

> [t]he personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [plaintiffs] by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). "[W]hile facts and evidence solely within a defendant's possession and knowledge may be pled 'on information and belief,' this does not mean that those matters may be pled lacking any detail at all." *Miller v. City of New York*, No. 05-6024, 2007 WL 1062505, *4 (E.D.N.Y. Mar. 30, 2007) (citing, *inter alia*, *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 180 (2d Cir. 2004)); *see DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987) ("[T]he allegations must be accompanied by a statement of the facts upon which the belief is based."). The Court will review Plaintiffs allegations with respect to each of the individual Defendants in turn.

### 1. Andrew M. Cuomo

Plaintiffs have alleged that Defendant Cuomo is the Governor of New York and, upon information and belief, that he "approved and directed the implementation of reduced health insurance benefits for members of the Plaintiff Court Unions which were enacted December 1, 2011 retroactive to October 1, 2011." *See* Dkt. No. 1 at ¶¶ 28-29. Plaintiffs have also alleged that Chapter 491 was "a Governor's program bill," *id.* at 81, and that the Governor's office issued a press release regarding the details of the 2011 CSEA CBA, *id.* at 88-89.

### 2. Jonathan Lippman

Plaintiffs have alleged that Defendant Lippman is the Chief Judge of UCS who "establishes Statewide standards and administrative policies after consulting with the Administrative Board of the Courts and approval by the Court of Appeals," and that Defendant Prudenti supervises the courts, including the implementation of CBAs, on Defendant Lippman's behalf. *Id.* at 31-32.

### 3. A. Gail Prudenti

Plaintiffs have alleged that Defendant Prudenti is the Chief Administrative Judge of UCS and, on behalf of Defendant Lippman, "supervises the administration and operation of the courts which includes the implementation and administration of collective bargaining agreements between UCS and employee organizations representing nonjudicial court employees throughout the State of New York." *Id.* at 32.

### 4. Patricia A. Hite

Plaintiffs have alleged that Defendant Hite is the Acting Commissioner of the Civil Service Department and, upon information and belief, that she approved the administrative extension and implementation of increased costs and reduced health insurance benefits and coverage for employees represented by the Plaintiff Court Unions and their dependents effective December 1, 2011 and retroactive to October 1, 2011. *Id.* at ¶¶ 35-36. Plaintiffs have further alleged upon information and belief that Defendant Hite has not attended or voted in an official capacity as Commission President or Acting President at any public meeting for the Commission. *Id.* at ¶ 40. Plaintiffs also allege that Defendant Hite, with Defendant Megna's approval, extended the modified State contribution rates negotiated with CSEA to current and retired employees of UCS. *Id.* at ¶¶ 91-101.

### 5. Caroline W. Ahl & J. Dennis Hanrahan

Plaintiffs have alleged that Defendants Ahl and Hanrahan "together constitute the Civil Service Commission." *Id.* at ¶ 41.

### 6. Robert L. Megna

Plaintiffs have alleged that Defendant Megna is the Director for the New York State Division of the Budget and, upon information and belief, that he "approved the administrative extension and implementation of increased costs and reduced health insurance benefits and coverage for employees represented by the eight Plaintiff Court Unions and their dependents effective December 1, 2011 and retroactive to October 1, 2011." *Id.* at ¶¶ 42-43. Plaintiffs also allege that Defendant Megna approved Defendant Hite's extension of the modified State contribution rates negotiated with CSEA to current and retired employees of UCS. *Id.* at ¶¶ 91-101.

### 7. Thomas P. DiNapoli

Plaintiffs have alleged that Defendant DiNapoli is the Comptroller of the State of New York and, in that capacity, he "oversees and authorizes the payment of salaries and pensions for all current and retired UCS employees." *Id.* at ¶ 44.

Based upon a review of the allegations in the Complaint, the Court finds that Plaintiffs have failed to make any direct or indirect allegations sufficient to permit an inference that Defendants Cuomo, Lippman, Prudenti, Ahl, Hanrahan, and DiNapoli acted or failed to act in any of the ways that would subject them to personal liability for the violations alleged by Plaintiffs. Accordingly, Defendants' motion to dismiss Plaintiffs' claims as to these Defendants in their individual capacity is granted.

Rule 15(a) of the Federal Rules of Civil Procedure provides that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15. "Generally, a district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009) (internal quotation marks omitted). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss" pursuant to Federal Rule of Civil Procedure 12(b)(6). *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).

Here, there has been no showing of bad faith or undue delay by Plaintiffs, nor would Defendants suffer any prejudice if Plaintiffs are permitted to amend their complaint since there are presently ten related actions pending before this Court in which the parties have not begun conducting discovery. Moreover, the Court finds that such amendment would not be futile since the Complaint could withstand a motion to dismiss on these grounds if properly amended. Accordingly, the Court grants Defendants' motion to dismiss for failure to sufficiently plead these Defendants' personal involvement, with leave to amend.

**B.     Legislative Immunity**

"[L]egislators are absolutely immune from liability for . . . all actions taken in the sphere of legitimate legislative activity." *Bogan v. Scott-Harris*, 523 U.S. 44, 48, 54 (1998) (quotation and citations omitted). Legislative immunity only protects municipal officers from civil liability when they are sued in their personal capacities, and not when sued in their official capacities. *Baines v. Masiello*, 288 F. Supp. 2d 376, 383 (W.D.N.Y. 2003) (citations omitted). Legislative immunity may bar claims for money damages, injunctions, and declaratory relief brought against state and local officials in their personal capacities. *State Emp.*, 494 F.3d at 82 (citation omitted); *Bogan*, 523 U.S. 44, 54 (1998). "Whether an act is legislative turns on the nature of the act,

rather than on the motive or intent of the official performing it." *Christian v. Town of Riga*, 649 F. Supp. 2d 84, 103-104 (W.D.N.Y. 2009) (holding that legislative immunity shields an official from liability if the act in question was undertaken "in the sphere of legitimate legislative activity") (quoting *Bogan*, 523 U.S. at 54).

Two factors are relevant to determining whether a defendant's acts are within that sphere: (1) whether the actions were an integral part of the legislative process; and (2) whether the actions were legislative "in substance" and "bore all the hallmarks of traditional legislation." *Bogan*, 523 U.S. at 54-56. Such traditional legislation includes "policymaking decision[s] implicating budgetary priories . . . and the services the [government] provides to its constituents." *Id*. Legislative immunity applies to acts within the "legislative sphere" even where the conduct, "if performed in other than legislative contexts, would in itself be unconstitutional or otherwise contrary to criminal or civil statutes." *Doe v. McMillan*, 412 U.S. 306, 312–13 (1973) (citation omitted).

Before defendants in the instant case can invoke legislative immunity, they have the burden of establishing both of the following: (1) that the acts giving rise to the harm alleged in the complaint were undertaken when defendants were acting in their legislative capacities under the functional test set forth in *Bogan*; and (2) that the particular relief sought would enjoin defendants in their legislative capacities, and not in some other capacity in which they would not be entitled to legislative immunity. *See State Emp.*, 494 F.3d at 89; *see also Canary v. Osborn*, 211 F.3d 324, 328 (6th Cir. 2000) (holding that the burden is on the defendants to establish the existence of absolute legislative immunity).

Here, Defendants argue that by issuing the regulations, they were fulfilling discretionary, policymaking functions implicating State budgetary priorities. As discussed *supra*, Plaintiffs

claim that defendants acts were *ultra vires*, without authority, and null and void. Taking the allegations in the complaint as true, as the Court must do on a motion to dismiss, Plaintiffs have sufficiently alleged that Defendants were acting beyond the scope of their authority as public officials. Drawing all reasonable inferences in Plaintiffs' favor, the Court finds that the allegations are sufficiently pled to defeat Defendants' motion at this stage of the litigation. *See Collin Cnty. Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods (HAVEN)*, 654 F. Supp. 943, 949 (N.D.Tex. 1987) (holding that the plaintiff's allegations that the defendants' actions were "*ultra vires*" in character and that they acted outside of their capacities as public officials arguably "deprives the [defendants] of Rule 12(b)(6) dismissal based upon an absolute immunity defense"). At this stage of the litigation, based upon the sparse record, the Court cannot state as a matter of law that Defendants are entitled to legislative immunity. *See Phillips v. Town of Brookhaven*, 216 A.D.2d 374, 375 (2d Dep't 1995) (stating that "[i]t cannot be determined on the instant record that the individual defendants were acting exclusively in a legislative capacity, which is required for immunity to attach"); *see also Moxley v. Town of Walkersville,* 601 F. Supp. 2d 648, 662 (D. Md. 2009) (holding that "the doctrine of legislative immunity is not uniquely asserted on motions to dismiss"). This ruling does not prevent Defendants from renewing their motion with respect to the applicability of the doctrine of legislative immunity after sufficient discovery and development of the record.

## II.     Contracts Clause

Defendants move to dismiss Plaintiffs' federal claims for impairment of contract. Article I, Section 10 of the Constitution prohibits states from passing any law "impairing the Obligation of Contracts." While the language of the Contracts Clause is absolute on its face, "[i]t does not trump the police power of a state to protect the general welfare of its citizens, a power which is

'paramount to any rights under contracts between individuals.'" *Buffalo Teachers Fed'n v. Tobe*, 464 F.3d 362, 367 (2d Cir. 2006) (holding that courts must accommodate the Contracts Clause with the inherent police power of the state to safeguard the vital interests of its people) (quoting *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 241 (1978)).  To state a cause of action for violation of the Contracts Clause, a complaint must allege sufficient facts demonstrating that a state law has "operated as a substantial impairment of a contractual relationship." *Nunez v. Cuomo*, 2012 WL 3241260, at *6 (citing *Harmon v. Markus*, 412 Fed. Appx. 420, 423 (2d Cir. 2011)).  In this regard, there are three factors that the Court will consider: (1) whether a contractual relationship exists; (2) whether a change in law impairs that contractual relationship; and (3) whether the impairment is substantial.  *Harmon,* 412 Fed. Appx. at 423.  A state law that impairs a contractual obligation will not be deemed unconstitutional so long as: (1) it serves a demonstrated legitimate public purpose, such as remedying a general social or economic problem; and (2) the means chosen to accomplish the public purpose is reasonable and necessary.  *See Buffalo Teachers Fed'n*, 464 F.3d at 368.

### A.    Existence of a Contractual Relationship

Defendants argue that Plaintiffs have "no valid and enforceable contract that provides that the State cannot reduce its contribution rate for health insurance coverage."  Dkt. No. 16-1 at 14; *see also id.* at 15 (stating that "[t]here is . . . no express or implied contract by which New York State has bound itself to provide optional health insurance with perpetually fixed contribution rates").  Rather, Defendants contend that the Plaintiffs' CBAs provided members with guarantees only for the duration of those (now expired) CBAs and, in any event, all that the CBAs guaranteed while in effect was continued coverage under the same co-payment structure that applies to the majority of represented Executive Branch employees (*i.e.*, employees represented

by CSEA).  Plaintiffs claim that the State has a contractual obligation to maintain a State

contribution rate at or above what was provided for in CSL § 167(1) at the time the last CBAs

were executed.  Plaintiffs allege three bases for the finding of this contractual obligation:  their

respective CBAs for the time period April 1, 2007, to March 31, 2011, as extended under the so-

called *Triborough Amendment*; the parties' past practice; and the terms of CSL § 167 as it existed

on April 1, 2007.

Plaintiffs allege that pursuant to the Taylor Law (Civil Service Law Article 14) the

agreement to provide health coverage at the rates set forth in the CBA remains in full force and

effect until a successor agreement or award.  *See* Dkt. No. 1 at ¶ 59.  Plaintiffs further allege that,

> upon the expiration of a CBA, it is against the law for a public
> employer or its agents deliberately to refuse to continue all the
> terms of an expired agreement until a new agreement is negotiated.
> *See* CLS § 209-a.1(e) (the "Triborough Amendment").  In other
> words, the terms of an expired contract remain in effect until a
> successor agreement is negotiated (in a status quo period).
> ...
> Plaintiffs' CBAs provide a Article 8.1, that the "State shall *continue
> to provide* health and prescription drug benefits administered by the
> Department of Civil Service."  (Emphasis added).
>
> Article 8.1 is consistent with and reflects the parties' agreement and
> mutual understandings that the State Defendants are contractually
> obligated to continue: (1) providing, to current union members and
> their dependents, the same State Contribution Rate and the same
> health insurance and prescription drug benefits that the State
> Defendants provided under the preceding CSA, for the duration of
> the CSA and until a successor CSA is negotiated; and (2) providing,
> to retired union members and their dependents, the same State
> Contribution Rate and the same health insurance and prescription
> drug benefits that the State Defendants provided under the CSA in
> effect at the time of their retirement.
> ...
> Article 8.1 of the parties' CBA guarantees a static level of health
> insurance and prescription drug benefits and coverages for the
> entire term of the CBA, and any status quo period that may follow,
> unless the parties agree otherwise.

*Id.* at ¶¶ 60, 63-64, 66.

Plaintiffs cite to the plain language of the CBA, which provides that

> [e]mployees enrolled in such plans shall receive health and prescription drug benefits to the same extent, at the same contribution level, [and] in the same form and with the same co-payment structure that applies to the majority of represented Executive Branch employees [covered by such plans].

*Id.* at 65 (alterations in original).

Plaintiffs further allege that based upon the CBA negotiations, Chapter 14 of the Laws of 1983, and the past practices and representations by the State, the State was contractually obligated to provide health insurance benefits at the rates set forth in CSL § 167(1) as of April 1, 2007. *See id.* at 67-78.

Based upon the record, as it presently exists, Plaintiffs' allegations identify written language capable of reasonably being interpreted as creating a promise to provide Plaintiffs with the State contribution rate set forth in CSL § 167(1) as of April 1, 2007, until a successor CBA was negotiated. This finding is consistent with the Court's prior orders on defendants' motion to dismiss similar allegations contained in complaints filed by other plaintiff unions. *See, e.g.*, *New York State Corr. Officers & Police Benevolent Ass'n,* 911 F. Supp. 2d at 137-142.

Defendants argue that this Court's prior orders should not be followed here because: (1) "unlike the CBAs in this action, the CBAs in the [related] actions provide for the continuation of coverage 'unless specifically modified or replaced pursuant to this agreement,'" Dkt. No. 26 at 4; (2) "unlike the CBAs in the present action, the CBAs in the [related] actions expressly set forth the specific percentages of the cost of coverage to be paid by the State and the employees," *id.* at 5; and (3) the relevant provisions in the CBAs in this action are identical to that in *New York State*

*Court Officers Ass'n v. Hite*, 851 F. Supp. 2d 575 (S.D.N.Y. 2012), *aff'd*, 475 Fed. Appx. 803

("*NYSCOA*"), *see id.*

As an initial matter, the Court notes that Plaintiffs did not append their respective CBAs to the Complaint and, therefore, they are not part of the record on a motion to dismiss under Rule 12(b)(6). *See Hejmanowski v. Bykowicz*, No. 09-915A, 2010 WL 161446, *2 (W.D.N.Y. Jan. 13, 2010) (observing that "Federal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings offered in conjunction with a Rule 12(b)(6) motion"). Accordingly, Defendants' first argument cannot be supported on the existing record and must be rejected at this stage of the litigation.

Defendants correctly observe that Plaintiffs' CBAs, as alleged in the Complaint, contain the same provision as the plaintiff's CBA in the *NYSCOA* case,[3] and do not contain specific percentages for the State contribution rate. The relevant provision of the CBA at issue in the *NYSCOA* case provided that "[e]mployees . . . shall receive health and prescription drug benefits . . . at the same contribution level . . . that applies to the majority of represented Executive Branch employees." *NYSCOA*, 851 F. Supp. 2d at 577. The court held that "[t]he contract does not guarantee that Union members will receive health benefits at the rates set by Civil Service law § 167(1). It guarantees that they will receive benefits at the same rates as the majority of executive brand employees." *Id.* at 579. As this Court observed in its orders on defendants' motions to dismiss the complaints in the related cases, the *NYSCOA* case is procedurally distinguishable from this action. Most importantly, the matter was before the Southern District Court on a motion for a preliminary injunction, not a motion to dismiss and, thus, different standards of proof and analysis

_____

[3] After the Southern District Court issued a decision on Plaintiff's motion for a preliminary injunction, the case was transferred to the Northern District of New York. The matter is presently pending herein under Docket No. 12-CV-532.

were applied. *See Lawrence v. Town of Brookhaven Dep't of Hous., Cmty. Dev. & Intergov. Affairs*, No. 07-2243, 2007 WL 4591845,*13 (E.D.N.Y. Dec. 26, 2007). "[U]nlike a preliminary injunction motion, dismissal pursuant to Rule 12(b)(6) is not based on whether Plaintiff is likely to prevail, and all reasonable inferences must be viewed in a light most favorable to Plaintiff." *Id*. "In opposing a motion to dismiss, a plaintiff is not required to prove her case; she must simply establish that the allegations in the Complaint are sufficient to render her claims plausible." *Id*. (citing *Iqbal*, 490 F.3d at 158) (internal citation omitted). Moreover, there is no proof before the Court on a motion dismiss whether, as Defendants contend, CSEA employees constitute a "majority of represented Executive Brand employees," or what the terms of the CSEA CBA was before or after Chapter 491 of the Laws of 2011 was passed and implemented. In addition, as noted above, Plaintiffs' CBAs are not part of the record on this motion to dismiss. Thus, the Court cannot interpret the meaning of the CBAs as a matter of law without having those documents, in their entirety, before it. For these reasons, this Court finds the holding in *NYSCOA* inapplicable to the issues before the Court at this juncture.[4]

Defendants also rely on *Matter of Lippman v. Board of Education*, 66 N.Y.2d 313 (1985), for the proposition that public employees have no contractual, statutory, or constitutional right to undiminished health insurance benefits. The court in *Matter of Lippman* held that health

---

[4] The Court notes that both *NYSCOA* and *In re Retired Public Employees Ass'n v. Cuomo*, No. 7586-11, 2012 WL 6654067 (Sup. Ct. Albany Co. Dec. 17, 2012) ("*RPEA*") held that CSL § 167(1) did not give rise to a contractual obligation. Defendants argue that these cases compel this Court to depart from its prior rulings in the related cases. The Court declines to do so. First, these cases are not binding precedent. *See supra* (discussing *NYSCOA*); *New York State Corr. Officers & Police Benevolent Ass'n v. State of New York,* No. 11-1523, 2013 WL 3450383 (Jul. 19, 2013 N.D.N.Y.) (addressing *RPEA* in the context of defendants' motion for reconsideration in the related cases). Second, and most importantly, the Court has found that Plaintiffs have plausibly pled the existence of a contractual obligation on the basis of their respective CBAs and parties' past practice. Accordingly, the existence of a contractual obligation under CSL § 167(1) is not determinative to resolution of this issue and, therefore, the Court declines to depart from its prior rulings.

34

insurance benefits are not withing the protection of article V, section 7 of the New York State Constitution, which provides that "membership in any pension or retirement system of the state or of a civil division thereof shall be a contractual relationship, the benefits of which shall not be diminished or impaired." Since Plaintiffs do not allege any causes of action arising from the New York State Constitution, this aspect of the court's holding has no bearing on Plaintiffs' claims. The court in *Matter of Lippman* also found no support for the contention that petitioners there had a contractual right to continuation of health insurance contribution rates. Unlike Plaintiffs in the instant matter, however, petitioners in *Matter of Lippman* were unrepresented employee-teachers who did not operate under a CBA. Rather, their health benefits were provided pursuant to a series of resolutions adopted by their employer-school board. Moreover, the court found "positive evidence . . . that [the school board] may unilaterally adjust rates of contribution." *Id.* at 320. Thus, this aspect of the court's holding in *Matter of Lippman* is also inapplicable to the instant motion.

As discussed *supra*, the Court has found that Plaintiffs have satisfied their burden to identify specific written language that is reasonably susceptible to interpretation as a promise to maintain the State contribution rates in effect at the time the CBAs were executed. On a motion to dismiss, that is all that Plaintiffs must establish. Consequently, at this stage of the litigation, Plaintiffs have adequately pled the existence of a contractual right in perpetually fixed contributions to survive a motion to dismiss. However, the Court cannot make any conclusions as a matter of law with respect to this issue at this time.

### B. Substantial Impairment

Even assuming Plaintiffs possessed a valid contractual interest, Defendants argue that they have not substantially impaired plaintiffs' rights. Defendants contend that the NYSHIP program

is still in place and thus, Defendants are fulfilling their contractual obligations. Moreover, Defendants contend that the adjustment to the subsidy rate was a foreseeable variable and within the parties' reasonable expectations.

An impairment of a contract must be "substantial" for it to violate the Contracts Clause. *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 411 (1983). Impairments that affect the terms upon which the parties have reasonably relied or that significantly alter the duties of the party are substantial. *See Allied Structural Steel Co.*, 438 U.S. at 245. The primary consideration in determining whether the state law has, in fact, operated as a substantial impairment is the extent to which reasonable expectations under the contract have been disrupted. *See Sanitation and Recycling Indus., Inc. v. City of New York*, 107 F.3d 985, 993 (2d Cir. 1997) ("Impairment is greatest where the challenged government legislation was wholly unexpected"). "[A] law that provides only one side of the bargaining table with the power to modify any term of a contract after it has been negotiated and executed is perhaps the epitome of a substantial impairment[.]" *Donohue v. Mangano*, 886 F. Supp. 2d 126, 156, 158 (E.D.N.Y. 2012) ("This far-reaching power . . . can arguably be itself a substantial impairment to a contractual relationship").

In this matter, Plaintiffs allege that the new reduced contribution rates resulted in an increase in the cost of health insurance and decreased wages and pension payments. *See, e.g.*, Dkt. No. 1 at ¶¶ 103-104. Plaintiffs have made a number of allegations regarding their expectations under the CBAs. For example, Plaintiffs allege that "[s]ince January 1, 1983, each Plaintiff Court Union entered into at least five succeeding CBAs with State Defendants. All CBAs constituted valid, binding, and enforceable contracts between the parties. From 1983, up to December 1, 2011, health insurance and related benefits were implemented consistent with the

parties' CBAs and their associated past practices." *Id.* at ¶ 58; *see also* ¶ 77 ("From January 1, 1983 to December 1, 2011, UCS and the eight Plaintiff Court Unions acted consistent with the understanding that the State Defendants were obligated to act in accordance with its contractual obligations under the CBAs and established a practice that implemented this understanding."). Plaintiffs argue that they relied in good faith upon the expectation that the State would continue to contribute towards their health insurance costs in compliance with the CBAs. *Id.* at ¶ 80. Based upon the allegations in the complaint and CSL § 167(8), Plaintiffs have sufficiently alleged that the impairment was not reasonably expected.

Further, Plaintiffs allege that Defendants unilaterally altered the terms of the CBAs after they had been negotiated and executed. *Id.* at ¶ 110. Plaintiffs contend that "it is against the law for a public employer or its agents deliberately to refuse to continue all the terms of an expired agreement until a new agreement is negotiated." *Id.* at ¶ 60 (citing CSL § 209-a.1(e)). Moreover, Plaintiffs claim that "Defendants' unilateral reductions and modification to the State Contribution Rate and health insurance and prescription drug benefits for current and retired union members and their dependents: (1) substantially impaired their contractual obligations under the parties' CBAs, their past practice and State law; (2) disrupted the reasonable expectations of the eight Plaintiff Court Unions and their current and retired members and their dependents under the CBA, the parties' past practice and State law; and (3) modified essential terms and conditions under the CBAs, their past practice and State law - upon which the eight Plaintiff Court Unions and their current and retired members and dependents reasonably and materially relied." *Id.* at

123. Based upon the record as it currently exists, Plaintiffs have pled sufficient facts supporting a plausible claim that the impairment to their contractual rights was substantial.[5]

## C.  Legitimate Public Purpose and Reasonable and Necessary

When a state law constitutes substantial impairment, the state must show a significant and legitimate public purpose behind the law. *See Energy Reserves Group*, 459 U.S. at 411-12. A law that substantially impairs contractual relations must be specifically tailored to meet the societal ill it is supposedly designed to ameliorate. *See Allied Structural Steel*, 438 U.S. at 243. The Second Circuit has held that "[a] legitimate public purpose is one 'aimed at remedying an important general social or economic problem rather than providing a benefit to special interests.'" *Buffalo Teachers Fed'n*, 464 F.3d at 368. "[C]ourts have often held that the legislative interest in addressing a fiscal emergency is a legitimate public interest" however, "the purpose may not be simply the financial benefit of the sovereign." *Id.* at 368-69 (citation omitted). Moreover, although economic concerns can give rise to the use of the police power, such concerns must be related to unprecedented emergencies such as mass foreclosures caused by the Great Depression. *Id.* at 369. "That a contract-impairing law has a legitimate public purpose does not mean there is no Contracts Clause violation. The impairment must also be one where the means chosen are reasonable and necessary to meet the stated legitimate public purpose." *Id.* at 369. On a motion to dismiss, the court is not bound to accept the legislature's justification for the public purpose. *See Nat'l Educ. Ass'n -Rhode Island by Scigulinsky v. Retirement Bd. of Rhode Island Emp. Retirement Sys.*, 890 F. Supp. 1143, 1162 (D.R.I. 1995).

---

[5] Defendants cite to *Local 342, Long Island Pub. Serv. Emp., UMD, ILA, AFL-CIO v. Town Bd. of the Town of Huntington*, 31 F.3d 1191, 1194 (2d Cir. 1994) in support of the argument that the law did not prevent the parties from fulfilling their obligations and thus, there was no substantial impairment. The Court has reviewed the holding and finds the facts vastly dissimilar from those at hand. Moreover, *Local 342* was before the Southern District on a motion for a preliminary injunction which, as discussed *supra*, requires a different standard of proof than a motion to dismiss. Thus, at this stage of the litigation, given the factual and procedural differences, the Court is not compelled to abide by the holding in *Local 342*.

The "reasonable and necessary" analysis involves a consideration of whether the adjustment of the rights and responsibilities of contracting parties is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the legislation's adoption. *Am. Fed'n of State, County & Mun. Emps. v. City of Benton, Arkansas*, 513 F.3d 874, 879-880 (8th Cir. 2008) (citing *Energy Reserves Group, Inc.*, 495 U.S. at 412 (1983)). Before analyzing whether an act is reasonable and necessary, the court must determine the degree of deference afforded to the legislature. Where the state impairs a public contract to which it is a party, the state's self-interest is at stake and, thus, the court will afford less deference to the state's decision to alter its own contractual obligations. *United Auto., Aero., Agric. Implement Workers of Am. Int'l Union v. Fortuno*, 633 F.3d 37, 45 (1st Cir. 2011); *see also Buffalo Teachers Fed'n*, 464 F.3d at 369 (holding that "[w]hen a state's legislation is self-serving and impairs the obligations of its own contracts, courts are less deferential to the state's assessment of reasonableness and necessity"). "The relevant inquiry for the Court is to ensure that states neither 'consider impairing the obligations of [their] own contracts on a par with other policy alternatives' nor 'impose a drastic impairment when an evident and more moderate course would serve its purposes equally well,' nor act unreasonably 'in light of the surrounding circumstances.'" *Donohue*, 886 F. Supp. 2d at 169 (citing *U.S. Trust Co. of N.Y. v. New Jersey*, 431 U.S. 1, 30–31 (1977)). In this matter, the State is a party to the CBA and, thus, the Court will afford less deference to the State's decisions.

"To be reasonable and necessary under *less deference scrutiny*, it must be shown that the state did not (1) 'consider impairing the . . . contracts on par with other policy alternatives' or (2) 'impose a drastic impairment when an evident and more moderate course would serve its purpose equally well,' nor (3) act unreasonably 'in light of the surrounding circumstances.'" *Buffalo*

*Teachers Fed'n*, 464 F.3d at 371. Some factors to be considered under this inquiry include: "whether the act (1) was an emergency measure; (2) was one to protect a basic societal interest, rather than particular individuals; (3) was tailored appropriately to its purpose; (4) imposed reasonable conditions; and (5) was limited to the duration of the emergency." *Donohue*,886 F. Supp. 2d at 159 (citing, *inter alia, Energy Reserves Grp.*, 459 U.S. at 410 n.11).

In a case in this district, Senior United States District Judge Lawrence E. Kahn addressed the issue of reasonableness while affording "less deference" to the State's decisions. *Donohue v. Patterson*, 715 F. Supp. 2d 306, 322 (N.D.N.Y. 2010). The *Donohue* case involved an emergency appropriations bill which enacted unpaid furloughs, a wage freeze, and a benefits freeze on certain groups of state employees in contravention of a number of CBAs. *Id*. at 313. The "extender bill" expressly imposed the altered terms "[n]ot withstanding any other provisions of this section or of any other law, including article fourteen of this chapter, or collective bargaining agreement or other analogous contract or binding arbitration award." *Id*. at 314. The court assumed there was a legitimate public purpose and directed it's attention to the reasonableness issue. Judge Kahn noted that the defendants failed to present any showing of a substantial record of any legislative consideration of policy alternatives to the challenged bill:

> Defendants do not, and evidently cannot, direct the Court to any legislative consideration of policy alternatives to the challenged terms in the bill; rather, the only support offered by Defendants for their assertion that the contractual impairment was not considered on par with other alternatives is a list of assorted expenditure decisions made by the State over the past two years, such as hiring freezes and delays of school aid. This will not do. That the State has made choices about funding and that a fiscal crisis remains today surely cannot, without much more, be sufficient justification for a drastic impairment of contracts to which the State is a party. Without any showing of a substantial record of considered alternatives the reasonableness and necessity of the challenged provisions are cast in serious doubt.

*Id.* at 322.

Rather, the court noted that defendants relied upon "generalities" and failed to demonstrate that they "did not impose a drastic impairment when an evident and more moderate course was available." *Id.* The court addressed the affidavits submitted by the defendants in support of the motion and held as follows:

> While Defendants have identified a fiscal emergency and note that state personnel comprise a significant source of state spending, their argument equates the broad public purpose of addressing the fiscal crisis with retrieving a specific level of savings attributed to the provisions. The two are not the same. Where reasonable alternatives exist for addressing the fiscal needs of the State which do not impair contracts, action taken that does impair such contracts is not an appropriate use of State power. In its submissions to the Court, the State artificially limits the scope of alternatives for addressing the fiscal crisis to retrieving a certain amount of savings from unionized state employees. According to this view, the reasonableness and necessity of the challenged provisions is demonstrated simply because there is a fiscal crisis and Plaintiffs have not identified alternative sources from their own contracts for the same level of funding as that desired by the State. Plaintiffs are not charged with that responsibility. The desired savings need not come from state personnel in the amount identified by the State. Rather, the State must consider both alternatives that do not impair contracts as well as those which might do so, but effect lesser degrees of impairment.

*Id.* at 323.

Judge Kahn concluded that,

> [m]ost importantly, the Court cannot ignore the conspicuous absence of a record showing that options were actually considered and compared, and that the conclusion was then reached that only the enacted provisions would suffice to fulfill a specified public purpose. While the Court would afford significant deference to a legislative judgment on an issue of this type where the State is not a party to the impaired contract, the Court cannot do so here — not only because the state is a contractual party but, far more critically, because actual legislative findings in support of the provision cannot be located; due to the take-it-or-leave nature of the extender bill, in conjunction with the Senate's contemporaneous and

> unanimous statement opposing the challenged provisions, there is
> no adequate basis before the Court on which it may be established
> that the provisions are reasonable and necessary.

*Id*. at 323.

While a fiscal crisis is a legitimate public interest, defendants cannot prevail on a motion to dismiss the complaint with an argument limited to "emphasizing the State's fiscal difficulties." *See id*. Broad reference to an economic problem simply does not speak to the policy consideration and tailoring that is required to pass scrutiny under plaintiffs' Contracts Clause challenge. *Id*.

At this stage of the litigation, all that is required is that plaintiffs plead a "cognizable legal claim for a remedy which may be proved at trial." *See Henrietta D. v. Giuliani*, No. 95-0641, 1996 WL 633382, *12 (E.D.N.Y. Oct. 25, 1996). Plaintiffs allege that there is no legitimate public purpose to reduce the State contribution rate, a substantial impairment of their contractual rights, or that the same was necessary and reasonable to accomplish said purpose. *See* Dkt. No. 1 at ¶¶ 95-99, 124-125. On a motion to dismiss, the Court must accept these allegations as true. Thus, the Court finds that Plaintiffs have pled sufficient facts suggesting that Defendants' actions were not reasonable and necessary.

While Defendants rely upon the economic emergency, a resolution of the issues surrounding Defendants' fiscal crisis and economic situation will involve questions not appropriately resolved on a motion to dismiss. *See Nat'l Educ. Ass'n*, 890 F. Supp. at 1164 (holding that a determination of the reasonableness of the defendants' actions based upon the economic crisis involving the Retirement System was premature on a motion to dismiss). Courts have held that "[r]esolution of . . . whether the contract-impairing enactment was 'reasonable and necessary to serve an important public purpose' . . . is not appropriate in the context of a motion

to dismiss." *JSS Realty Co., LLC v. Town of Kittery, Maine*, 177 F. Supp. 2d 64, 70 (D. Me. 2001). Defendants argue that the amendment to CSL § 167 was for a legitimate public purpose based upon the State's economic emergency and fiscal crisis. Even assuming that the Court accepts that explanation as a legitimate purpose, Defendants cannot to demonstrate that the means chosen were necessary at this stage of the ligation. Defendants do not explain why the language and provisions of Chapter 491 were selected and rather, rely upon the measures that the State refrained from enacting as a means of demonstrating reasonableness including the State's decision not to eliminate the NYSHIP program or rewrite CSL § 167 to prescribe more severe modifications. These assertions are unsupported by the record. Moreover, as Judge Kahn noted, listing the various ways that the State has attempted to "overhaul" the economy, *i.e.*, prison consolidation, mergers of state agencies, and reforms to the juvenile system, without more, is insufficient justification for impairing State contracts. *See Donohue*, 715 F. Supp. 2d at 323.

To summarize, although Defendants may prove otherwise upon completion of discovery and a motion for summary judgment, at this stage of the litigation, Plaintiffs have met their burden and have alleged a plausible cause of action for a violation of the Contracts Clause. However, the parties are cautioned to appreciate the "distinction" between the Rule 12(b)(6) standard and the summary judgment standard. The burden on the non-movant is significantly different on a motion for summary judgment. "Even if the same relevant documents were considered at each stage, general facts . . . receive consideration at summary judgment, but not in the Rule 12(b)(6) analysis." *Werbowsky v. Am. Waste Serv., Inc.*, No. 97-4319, 1998 WL 939882, *5 (6th Cir. Dec. 22, 1998) (holding that the Rule 12(b)(6) ruling was not a final judgment, and did not bind the district court at summary judgment). If presented with a motion for summary judgment, Plaintiffs will face the burden of citing to facts in the record and "must go

43

beyond the pleadings and come forth with specific facts indicating a genuine issues for trial." *See Connection Training Servs. v. City of Philadelphia*, 358 Fed. Appx. 315, 318 (3d Cir. 2009).

## II.     Due Process

As an initial matter, the Court is compelled to point out that the parties have not extensively briefed their arguments with respect to this cause of action.  It appears that Plaintiffs simply claim that Defendants violated their Fourteenth Amendment rights to be afforded adequate notice and a reasonable opportunity to be heard before being deprived of property to which they were lawfully entitled.  Plaintiffs argue that they possessed sufficient collective bargaining and statutorily created contract rights and that Defendants abolished the benefit without proper notice to Plaintiffs.  Defendants argue that Plaintiffs do not have a legitimate claim of entitlement to a property interest in insurance cost percentages and, therefore, cannot sustain a claim under Due Process.

The Fourteenth Amendment provides, in relevant part, that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1. In order to demonstrate a violation of either substantive or procedural due process rights, the plaintiff must first demonstrate the possession of a federally protected property right to the relief sought.  *Puckett v. City of Glen Cove*, 631 F. Supp. 2d 226, 236 (E.D.N.Y. 2009) (citing *Lisa's Party City, Inc. v. Town of Henrietta*, 185 F.3d 12, 16 (2d Cir.1999)).  Property interests  "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."  *Bd. of Regents of State Coll. v. Roth*, 408 U.S. 564, 577 (1972) (holding that the plaintiff must have more than a unilateral expectation; the plaintiff must have a legitimate claim of entitlement to the benefit).  The Second Circuit has held

that, "[i]n order for a person to have a property interest in a benefit such as the right to payment under a contract, [h]e must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Local 342, Long Island Pub. Serv. Emp., UMD, ILA, AFL-CIO v. Town Bd. of the Town of Huntington*, 31 F.3d 1191, 1194 (2d Cir. 1994) (citations omitted). "When determining whether a plaintiff has a claim of entitlement, we focus on the applicable statute, contract or regulation that purports to establish the benefit." *Martz v. Vill. of Valley Stream*, 22 F.3d 26, 30 (2d Cir.1994). "Courts have determined that in appropriate circumstances, contractual rights arising from collective bargaining agreement give rise to constitutional property right." *Jackson v. Roslyn Bd. of Educ.*, 652 F. Supp. 2d 332, 341 (E.D.N.Y. 2009) (citing *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 314 (2d Cir. 2002). A property interest in employment can be created by ordinance or state law. *See Winston v. City of New York,* 759 F.3d 242, 247 (2d Cir. 1985) (holding that the plaintiffs' benefits were found in the New York State Constitution and vested in the plaintiffs by the terms of a statutory scheme). The Second Circuit has held that,

> [i]n determining whether a given benefits regime creates a property interest protected by the Due Process Clause, we look to the statutes and regulations governing the distribution of benefits. Where those statutes or regulations meaningfully channel official discretion by mandating a defined administrative outcome, a property interest will be found to exist.

*Kapps v. Wing*, 404 F.3d 105, 113 (2d Cir. 2005) (internal citations and quotation marks omitted). Courts in this circuit have held that statutory framework may create a property interest. *See Kapps*, 404 F.3d at 113-15; *Basciano v. Herkimer*, 605 F.2d 605, 611 (2d Cir.1978) (holding that city administrative code created a property right in receipt of accident disability retirement benefits, where the code required officials to give benefits to applicants who met specified criteria); *see also Winston*, 759 F.3d at 242; *Sparveri v. Town of Rocky Hill*, 396 F. Supp. 2d 214,

218 (D. Conn. 2005) (noting that the plaintiff claimed that her entitlement to the level of pension and healthcare benefits was rooted in the statutory pension scheme established by the Town Charter and Plan ordinance).

In the Complaint, Plaintiffs' Second Cause of Action contains allegations relating to due process. Plaintiffs allege that the implementation of the reduced contribution rates violate Plaintiffs' rights to be afforded adequate notice and a reasonable opportunity to be heard before being deprived of property to which they were lawfully entitled. *See* Dkt. No. 1 at ¶ 141. Plaintiffs allege that their property rights are based upon the CBAs, past practice, and statutory rights. *See id*. at ¶ 139. While the Court cannot conclude as a matter of law that plaintiffs' possessed a property interest within the meaning of the Fourteenth Amendment, Plaintiffs have sufficiently articulated claims for due process violations to survive a motion to dismiss.

## III.    Regulatory Amendments

Defendants attempt to argue that Plaintiffs' causes of action challenging the regulations that were issued to implement the amendments to CSL § 167(8) should also be dismissed. While Defendants' motion does not make clear the basis for this aspect of the motion, it appears they contend (1) Plaintiffs do not have standing to challenge the regulations, and (2) since Plaintiffs' CBAs tied their State contribution rates to those provided for in the CSEA CBA, the regulations were unnecessary as to Plaintiffs and, therefore, had no effect on Plaintiffs distinct from any alleged effect of amended CSL § 167(8). The Court interprets Defendants' second contention as a restatement of the first and finds that Plaintiffs have standing to challenge the regulations.

Contrary to Defendants' assertions, Plaintiffs have sufficiently alleged that amended CSL § 167 and the regulations promulgated thereunder unconstitutionally impaired their contractual rights to the State contribution rates in effect when the CBAs were executed. Although none of

the Plaintiff Unions are specifically identified in the regulations, at this stage of the litigation the Court cannot conclude as a matter of law that they do not apply to Plaintiffs. Accordingly, the Court finds that Plaintiffs have standing to challenge the regulations.

## CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Defendants' motion to dismiss Plaintiffs' Complaint (Dkt. No. 1) is **GRANTED IN PART AND DENIED IN PART**; and the Court further

**ORDERS** that Defendants' motion to dismiss Plaintiffs' complaint as against the State of New York, New York State Unified Court System, New York State Civil Service Department, New York State Civil Service Commission, and New York State and Local Retirement System is **GRANTED** in its entirety; and the Court further

**ORDERS** that Defendants' motion to dismiss Plaintiffs' claims for monetary damages asserted against Defendants Cuomo, Lippman, Prudenti, Hite, Ahl, Hanrahan, Megna, and DiNapoli in their official capacity is **GRANTED**; and the Court further

**ORDERS** that Defendants' motion to dismiss Plaintiffs' claims for injunctive and declaratory relief asserted against Defendants Cuomo, Lippman, Prudenti, Hite, Ahl, Hanrahan, Megna, and DiNapoli in their official capacity is **GRANTED** only to the extent that such claims seek retrospective relief; and the Court further

**ORDERS** that Defendants' motion to dismiss Plaintiffs' Article 78 claims is **GRANTED**; and the Court further

**ORDERS** that Defendants' motion to dismiss Plaintiffs' claims asserted against Defendants Cuomo, Lippman, Prudenti, Ahl, Hanrahan, and DiNapoli in their personal capacity is **GRANTED**, with leave to amend; and the Court further

**ORDERS** that Defendants' motion is denied in all other respects.

**IT IS SO ORDERED.**

Dated:  September 30, 2013
      Albany, New York

**Mae A. D'Agostino**
**U.S. District Judge**