**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**BARBARA G. BROWN, as President and on behalf of the CITYWIDE ASSOCIATION OF LAW ASSISTANTS; ARTHUR CHELIOTES, as President and on behalf of LOCAL 1180, COMMUNICATIONS WORKERS OF AMERICA, AFL-CIO; JOHN CLANCY, as President and on behalf of the COURT OFFICERS BENEVOLENT ASSOCIATION OF NASSAU COUNTY; BRENDA LEVINSON, as President and on behalf of the COURT ATTORNEYS ASSOCIATION OF THE CITY OF NEW YORK; CHRISTOPHER MANNING, as President and on behalf of the SUFFOLK COUNTY COURT EMPLOYEES ASSOCIATION, INC.; JOHN STRANDBERG, as President and on behalf of the SUPREME COURT OFFICERS ASSOCIATION; and JOSEPH C. WALSH, as President and on behalf of the NEW YORK STATE COURT CLERKS ASSOCIATION,**

       **Plaintiffs,**

 vs.                **1:13-CV-645
                     (MAD/DEP)**

**ANDREW M. CUOMO, individually and in his official capacity as Governor of the State of New York; JONATHAN LIPPMAN, individually and in his capacity as the Chief Judge of the State of New York; A. GAIL PRUDENTI, individually and in her capacity as Chief Administrative Judge of the State of New York; PATRICIA A. HITE, individually and in her official capacity as Commissioner of the New York State Civil Service Department; CAROLINE W. AHL and J. DENNIS HANRAHAN, individually and in their official capacities as Commissioners of the New York State Civil Service Commission; ROBERT L. MEGNA, individually and in his official capacity as Director of the New York State Division of the Budget; and THOMAS P. DiNAPOLI, individually and in his official capacity as Comptroller of the State of New York,**

       **Defendants.**
_____

**APPEARANCES:**           **OF COUNSEL:**

**GREENBERG BURZICHELLI**  **SETH H. GREENBERG, ESQ.**
**GREENBERG P.C.**  **LINDA N. KELLER, ESQ.**
3000 Marcus Avenue, Suite 1W7  **GENEVIEVE E. PEEPLES, ESQ.**
Lake Success, New York 11042
Attorneys for Plaintiffs

**OFFICE OF THE NEW YORK**  **HELENA LYNCH, AAG**
**STATE ATTORNEY GENERAL**  **RICHARD LOMBARDO, AAG**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION[1]

On February 22, 2012, Plaintiffs commenced this action alleging that Defendants unilaterally increased the percentage of contributions that Plaintiffs, active and retired employees, are required to pay for health insurance benefits and thereby violated the Contracts Clause and Due Process Clause of the United States Constitution, impaired Plaintiffs' contractual rights under

---

[1] The instant case is one of eleven related cases currently before this Court, all brought against, for the most part, the same individual Defendants and are all related to the increase in contribution rates for retirees' health insurance. *See Donohue v. Cuomo*, No. 1:11-cv-1530 (N.D.N.Y.); *NYSCOBA, Inc. v. New York*, No. 1:11-cv-1523 (N.D.N.Y.); *N.Y.S. Law Enforcement Officers Union Council 82, AFSCME, AFL-CIO v. New York*, No. 1:11-cv-1525 (N.D.N.Y.); *Police Benevolent Assoc. of the N.Y.S. Troopers, Inc. v. New York*, No. 1:11-cv-1526 (N.D.N.Y.); *N.Y.S. Police Investigators Assoc., Local 4 IUPA, AFL-CIO v. New York*, No. 1:11-cv-1527 (N.D.N.Y.); *Police Benevolent Assoc. of N.Y.S., Inc. v. New York*, No. 1:11-cv-1528 (N.D.N.Y.); *Krey v. Cuomo*, No. 1:11-cv-1529 (N.D.N.Y.); *Spence v. New York*, No. 1:11-cv-1533 (N.D.N.Y.); *Roberts v. New York*, No. 1:12-cv-46 (N.D.N.Y.); *N.Y. Court Officers Assoc. v. Hite*, No. 1:12-cv-532 (N.D.N.Y.); *Brown v. New York*, No. 1:13-cv-645 (N.D.N.Y.). With minor variations, the related cases all assert the same causes of action and raise the same arguments in the pending motions for summary judgment. The Court has determined that *Donohue v. Cuomo*, No. 1:11-cv-1530 (N.D.N.Y.) shall serve as the "Lead Case." Familiarity with the Lead Case is presumed. The Court adopts and incorporates by reference the related Memorandum-Decision and Order in the Lead Case into this Memorandum-Decision and Order and will only address those facts and legal issues that are distinct from the Lead Case.

the terms of their respective Collective Bargaining Agreements, and violated state law. *See* Dkt. No. 1.

Currently before the Court is Defendants' motion for summary judgment.

## II. BACKGROUND

### A.     The Parties

The Citywide Association of Law Assistants ("CALA") is the collective bargaining representative for non-judicial Unified Court System ("USC") court attorney employees within the City of New York. *See* Dkt. No. 106-2 at ¶ 1. Plaintiff Barbara Brown was, at the time the complaint was filed, the Chairperson of CALA. *See id.* at ¶ 2. Local 1180, Communication Workers of America AFL-CIO ("CWA") is the bargaining representative for certain non-judicial UCS employees. *See id.* at ¶ 3. Plaintiff Arthur Cheliotes was, at the time of the filing of the complaint, President of CWA. *See id.* at ¶ 4. The Court Officers Benevolent Association of Nassau County ("COBANC") is the bargaining representative for certain non-judicial USC employees in Nassau County. *See id.* at ¶ 5. Plaintiff John Clancy was, at the time of the filing of the complaint, the President of COBANC. *See id.* at ¶ 6. Local 1070, District Council 37, AFSCME AFL-CIO ("Local 1070") is the bargaining representative for certain non-judicial UCS employees. *See id.* at ¶ 7. Plaintiff Clifford Koppelman is the President of Local 1070. *See id.* at ¶ 8.

The Court Attorneys Association of the City of New York ("CAA") is the bargaining representative for certain non-judicial court attorney UCS employees in the city of New York. *See id.* at ¶ 9. Plaintiff Brenda Levinson was, at the time of the filing of the complaint, the President of CAA. *See id.* at ¶ 10. The Suffolk County Court Employees Association ("SC CEA") is the bargaining representative for certain non-judicial UCS employees in Suffolk

County. *See id.* at ¶ 11. Plaintiff Christopher Manning was, at the time of the filing of the complaint, the President of SC CEA. *See id.* at ¶ 12. The New York State Supreme Court Officers Association ("SCOA") is the bargaining representative of certain Supreme Court Officers employed by UCS. *See id.* at ¶ 13. Plaintiff John Standberg was, at the time of the filing of the complaint, the President of SCOA. *See id.* at ¶ 14. The New York State Court Clerks Association ("CCA") is the bargaining representative for certain non-judicial UCS court clerks. *See id.* at ¶ 15. Plaintiff Joseph C. Walsh is the President of CCA. *See id.* at ¶ 16.

Defendant Andrew M. Cuomo is the Governor of New York State. *See id.* at ¶ 17. Defendant Jonathan Lippman was, in 2011, the Chief Judge of the UCS. *See id.* at ¶ 18. Defendant A. Gail Prudenti was, in 2011, the Chief Administrative Judge of the Courts of New York State. *See id.* at ¶ 19. Defendant Patricia A. Hite was, in 2011, Acting Commissioner of the New York State Department of Civil Service. *See id.* at ¶ 20.[2] Defendants Caroline W. Ahl and J. Dennis Hanrahan were, in 2011, the members of the Civil Service Commission. *See id.* at ¶ 21. Defendant Robert Megna was, in 2011, the Director of the New York State Division of the Budget. *See id.* at ¶ 22. Defendant Thomas P. DiNapoli is the Comptroller of the State of New York. *See id.* at ¶ 23.

**B.     Collective Bargaining Agreement in Effect in 2011 Between New York and Plaintiffs**

During 2011, and at least until February 27, 2012, the collective bargaining agreements ("CBA") in effect between the State of New York and CALA, CWA, COBANC, Local 1070, CAA, SE CEA, SCOA, and CCA (collectively, the "Court Unions") were the respective CBAs for

---

[2] The Court notes that Plaintiffs object to the assertion that Defendant Hite was Acting Commissioner of the New York State Department of Civil Service. *See* Dkt. No. 96-22 at ¶ 10. The same objection was raised and addressed by the Court in the Lead Case and will not be repeated in the present matter.

the term April 1, 2007, to March 31, 2011 (the "2007-11 CBAs"). *See* Dkt. No. 106-2 at ¶ 24.

Section 8.1 of the 2007-11 CBAs provided as follows:

> The State shall continue to provide health and prescription drug
> benefits administered by the Department of Civil Service.
> Employees enrolled in such plans shall receive health and
> prescription drug benefits to the same extent, at the same
> contribution level, in the same form and with the same co-payment
> structure that applies to the majority of represented Executive
> Branch employees.

*Id.* at ¶ 25. Since January 1, 1983, each Court Union has entered into at least five succeeding CBAs with the State, all of which contained language substantively identical to Section 8.1 of the 2007-11 CBAs. *See id.* at ¶ 26.

**C.    CBAs Between the State and CSEA and the State and PEF in 2011**

On June 22, 2011, the Governor issued a press release announcing that the State had reached a five-year labor agreement with the Civil Service Employees Association ("CSEA"). *See* Dkt. No. 106-2 at ¶ 27. The press release announced a two percent increase in the premium contribution rate for Grade 9 employees and below, and a six percent increase for Grade 10 and above. *See id.*

The 2011-16 CBA between CSEA and the State was signed on August 15, 2011, and covered the periods between April 2, 2011 and April 1, 2016. *See id.* at ¶ 28. Section 9.14 of the 2011-16 CSEA CBA provides as follows:

> The State agrees to pay 90 percent of the cost of individual
> coverage and 75 percent of the cost of dependent coverage toward
> the hospital/medical/mental health and substance abuse components
> provided under the Empire Plan. Effective October 1, 2011 for
> employees in a title Salary Grade 9 or below, the State agrees to pay
> 88 percent of the cost of individual coverage and 73 percent of the
> cost of dependent coverage toward the hospital/medical/mental
> health and substance abuse components provided under the Empire
> Plan. Effective October 1, 2011 for employees in a title Salary
> Grade 10 and above or an employee equated to a position title

5

> Salary Grade 10 and above the State agrees to pay 84 percent of the
> cost of individual coverage and 69 percent of the cost of dependent
> coverage toward the hospital/medical/mental health and substance
> abuse components provided under the Empire Plan.

*Id.* at ¶ 29.

On November 3, 2011, PEF announced that its members ratified a four-year agreement with the State. *See id.* at ¶ 30. The term of that agreement was April 2, 2011 through April 1, 2015. *See id.*

Section 9.2(h) of the 2011-15 PEF CBA states as follows:

> The State agrees to pay 90 percent of the cost of the individual
> coverage and 75 percent of the cost of dependent coverage,
> including prescription drug coverage, provided under the Empire
> Plan. Effective October 1, 2011 for employees in a title Salary
> Grade 9 or below (or an employee equated to a position title Salary
> Grade 9 or below), the State agrees to pay 88 percent of the cost of
> individual coverage and 73 percent of the cost of dependent
> coverage. Effective October 1, 2011 for employees in a title Salary
> Grade 10 and above (or an employee equated to a position title
> Salary Grade 10 and above) the State agrees to pay 84 percent of
> the cost of individual coverage and 69 percent of the cost of
> dependent coverage.

*Id.* at ¶ 31.

The members of the CSEA and PEF constitute the majority of represented executive branch employees. *See id.* at ¶ 32.

**D.    Legislation, Administrative Measures, and Fiscal Crisis**

The Court will not repeat all of the facts relating to the 1983 and 2011 Legislation, the fiscal crisis facing the State in 2010 and 2011, or the parties' arguments relating to Defendant Hite acting as the head of the Department of Civil Service. Rather, the Court refers the parties to the discussion set forth in the accompanying Memorandum-Decision and Order from the Lead Case.

**F.    The Complaint and Defendants' Motion for Summary Judgment**

6

In their first cause of action, Plaintiffs allege that the increase in the percentage of the health insurance premium contribution paid by retirees violated the Contracts Clause of Article I, § 10 of the United States Constitution. Defendants contend that the Court should dismiss this cause of action because the collective bargaining agreements do not establish a contractual right to perpetually fixed health insurance premium contribution rates. Further, Defendants argue that, even if Plaintiffs do have a vested right to a perpetually fixed premium contribution rate, they failed to demonstrate a substantial impairment of that right. Moreover, Defendants contend that they are entitled to summary judgment on this claim because the law at issue served a legitimate public purpose and the means chosen to accomplish that purpose were reasonable and necessary.

The second cause of action allege that the retirees' premium contribution increase violated Plaintiffs' right to due process under the State and Federal Constitutions, respectively. Defendants argue that they are entitled to summary judgment because Plaintiffs do not have a constitutionally protected property right in perpetually fixed premium contribution rates. Additionally, Defendants contend that, even if Plaintiffs had a property interest, the claim still fails because they had an adequate state-court remedy of which they failed to avail themselves. Further, Defendants argue that the State due process claim must be dismissed because the New York State Constitution does not provide for the cause of action Plaintiffs assert.

The third cause of action alleges that the increase in the percentage of the health insurance premium contribution paid by retirees breached Plaintiffs' contractual rights under the 2007-11 CBAs. Defendants contend that the Court should decline to exercise supplemental jurisdiction over this claim since there is no viable federal claim and that this claim should otherwise be dismissed because it lacks merit.

The fourth cause of action seeks a judgment pursuant to Article 78 of the New York Civil Practice Law and Rules. Defendants contend that this claim was previously dismissed by the Court. *See* Dkt. No. 106-1 at 9 (citing Dkt. No. 48 at 21-22).

In their fifth and sixth causes of action, Plaintiffs allege violations of Civil Service Law § 209-a.1(d) & (e), which prohibit an employer from refusing to negotiate in good faith and to refuse to continue all of the terms of an expired CBA until a new agreement is negotiated. Defendants argue that they are entitled to summary judgment on these claims because the Court lacks subject matter jurisdiction over them and because the claims otherwise lack merit.[3]

The seventh and final cause of action alleges that L. 2011 Ch. 491, as applied to Plaintiffs, violates their rights under the Contracts Clause and Due Process Clause of the United States Constitution. Defendants claim that they are entitled to summary judgment as to this cause of action because it is entirely duplicative of Plaintiffs' fatally defective Contracts Clause and Due Process claims.

### III. DISCUSSION

**A.    Standard of Review**

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a

---

[3] In their response, Plaintiffs acknowledge that the Court previously dismissed Plaintiffs' claims brought pursuant to Civil Service Law § 209-a.1. *See* Dkt. No. 112 at 7 (citing Dkt. No. 48 at 18).

8

motion for summary judgment may not simply rely on the assertions in its pleading. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

**B.     Plaintiffs' Claims**

The Court will not restate here all of the relevant law or reasons why Defendants' motion for summary judgment is granted as to Plaintiffs' ten named causes of action. Rather, the Court directs the parties to the discussion in the Lead Case, which addresses each of the raised arguments. *See Donohue v. Cuomo*, No. 1:11-cv-1530, Dkt. No. 102. The Court will only briefly address arguments raised by Plaintiffs that are distinct from those addressed in the Lead Case.

Initially, Plaintiffs argue that the Court should exclude the declarations of Dominic Colafati and Darryl Decker due to Defendants' failure to disclose them as witnesses. *See* Dkt. No. 112 at 21-22. As discussed in detail in the Lead Case, Defendants' failure to disclose these witnesses did not result in any prejudice and Plaintiffs have failed to demonstrate that the Court should grant such extraordinary relief.

As discussed in detail in the Lead Case, ordinary principles of contract interpretation require the Court to conclude that none of the CBAs at issue guaranteed a perpetually fixed premium contribution rate into retirement. *See M & G Polymers USA, LLC v. Hobert Freel Tackett*, ___U.S.___, 135 S. Ct. 926, 937 (2015) (holding that, while a CBA may explicitly provide that certain terms continue after the agreement's expiration, when a contract fails to address the duration of retiree benefits, "a court may not infer that the parties intended those benefits to vest for life"). While the CBAs at issue all provide that retirees have the right to continue receiving health insurance through the NYSHIP, they are all silent as to the premium contribution rate to be paid by retirees. *See Serafino v. City of Hamtramck*, 707 Fed. Appx. 345, 352-53 (6th Cir. 2017) ("Looking to the four corners of the agreements, there is no indication that the City intended to provide *any* healthcare benefit to retirees for life, let alone a right to deductible-free, low-co-pay, forever-unalterable healthcare insurance") (emphasis in original). This conclusion is further supported by the legislation passed in 1983 providing that the State would continue to pay the full premium for pre-January 1, 1983 retirees. If retirees had a contractually vested perpetual right to the same contribution rates in effect at the time of their retirement, there would have been no need for an affirmative legislative carve-out specifically applicable to them. Finally, as set forth in the Lead Case, the undisputed facts establish that, even if Plaintiffs had a vested right to a perpetual fixed contribution rate, the small increase to the contribution rate was not a substantial impairment and the increase was reasonable and necessary in furtherance of an important government interest. *See Donohue v. Cuomo*, No. 1:11-cv-1530, Dkt. No. 102 at 26-32.

Plaintiffs contend that Civil Service Law § 167(1) is incorporated by reference into the CBAs. *See* Dkt. No. 112 at 1-10. As one court previously held, however, "[t]he contract does not

10

guarantee that Union members will receive health benefits at the same rates set by Civil Service Law § 167(1). It guarantees that they will receive benefits at the same rate as the majority of executive branch employees." *N.Y.S. Court Officers Ass'n v. Hite*, 851 F. Supp. 2d 575, 579 (S.D.N.Y. 2013). As such, as Defendants correctly contend, to the extent that any contract terms regarding health insurance vest into retirement, what vested is an entitlement to the same health insurance benefits as Executive Branch employees.

Plaintiffs' breach of contract cause of action must also be dismissed. Plaintiffs point to no contractual provision that was breached. The provisions regarding health insurance premiums do not extend beyond the life of the CBA and do not create a vested right to perpetually fixed premium contributions. *See Gallo*, 813 F.3d at 268.

As to Plaintiffs' due process claims, the undisputed facts demonstrate that neither the CBAs nor Civil Service Law § 167 created a property interest in fixed premium contribution rates in retirement. *See Costello v. Town of Fairfield*, 811 F.2d 782, 784 (2d Cir. 1987); *Pineman v. Fallon*, 662 F. Supp. 1311, 1318 (D. Conn. 1987) ("[G]enerally courts have sought to avoid interpreting statutory benefit programs as waiving the exercise of sovereign power to amend the statute in the future"). Nothing prevented New York from amending Section 167(8) and extending the premium shifts negotiated in 2011 to unrepresented employees and retirees. Further, Plaintiffs failed to address Defendants' argument that the due process cause of action is subject to dismissal because of the availability of a post-deprivation Article 78 proceeding. *See Campo v. N.Y.C. Emps. Ret. Sys.*, 843 F.2d 96, 102 (2d Cir. 1988); *Minima v. N.Y.C. Emps. Ret. Sys.*, No. 11-cv-2191, 2012 WL 4049822, *6 (E.D.N.Y. Aug. 17, 2012). Finally, contrary to Plaintiffs' argument, retiree premium contributions are not a form of deferred compensation. *See*

*M&G Polymers USA LLC*, 135 S. Ct. at 936 ("Retiree benefits are not a form of deferred compensation").

Based on the foregoing, Defendants' motion for summary judgment is granted.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** Defendants' motion for summary judgment (Dkt. No. 106) is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall attach a copy of the decision in the Lead Case (*Donohue v. Cuomo*, No. 1:11-cv-1530, Dkt. No. 102) to this Memorandum-Decision and Order; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance in the Local Rules.

**IT IS SO ORDERED.**

Dated: September 24, 2018
  Albany, New York

Mae A. D'Agostino
U.S. District Judge